# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **BEDNAQO HARPER,** | ) | |
| | ) | **No. 1:13-cv-08595** |
| **Plaintiff,** | ) | **No. 1:13-cv-09265** |
| | ) | **No. 1:14-cv-01984** |
| **v.** | ) | **No. 1:14-cv-01986** |
| | ) | **No. 1:14-cv-00848** |
| **OFFICER BOLTON, ET AL.,** | ) | |
| | ) | **Judge Tharp** |
| | ) | |
| **Defendants.** | ) | **Magistrate Judge Cole** |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

The plaintiff, currently in custody in a maximum security tier at the Cook County Jail, has brought five *pro se* civil rights actions pursuant to 42 U.S.C. § 1983.[1]  The plaintiff alleges that several Cook County Department of Corrections ("CCDOC") officers and employees violated his constitutional rights by:  ignoring his warnings that his cellmate's behavior posed a risk to his safety, which led to plaintiff being stabbed by his cellmate in his left forearm; (13 C 8595  Dkt. 6); by inadequately treating pain caused by a pre-existing hernia (13 C 9265 Dkt. 6);  inadequately treating pain in his left eye (14 C 1984 Dkt. 5); causing ankle soreness and swelling by confiscating his medically prescribed, orthopedic shoes (14 C1986 Dkt. 5); and inadequately treating pain in his left shoulder (14 C 0848 Dkt. 8).

---

[1] As the plaintiff explained at a status conference, he and others on his tier are not in solitary confinement and he has considerable freedom of movement.  It is just that there is greater security on his tier than in other parts of the Jail.

The plaintiff has filed five motions for appointment of counsel – recruitment is the appropriate term – in each of the cases because he is unable to afford counsel. *See* (13 C 8595 Dkt. 29), (13C 9265 Dkt. 12), (14 C 1984 Dkt.11), (14C 1986 Dkt. 10), (14C 0848 Dkt. 12). The motions, which are skillfully drafted reflect an awareness of the principles governing motions for the recruitment of counsel. They allege that the plaintiff's imprisonment will greatly limit his ability to litigate, that the issues involved are complex and will require significant research and investigation and that plaintiff has limited access to the law library and limited knowledge of the law. The motions also contend that a trial in these cases would "likely involve" conflicting testimony and counsel would "better enable plaintiff to present evidence and help in matters of which plaintiff may not be legally competent and aware." (Pl.'s Mot. ¶ 4) (Dkt. 29, 12, 10, 12).

Judge Tharp has referred the motions here for decision. *See* 28 U.S.C. 1§636(b)(1)(A); Rule 72(a), Federal Rules of Civil Procedure.

## B.
## Analysis

### 1.

There is no constitutional or statutory right to counsel in federal civil litigation. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (*en banc*); *Romanelli v. Suliene,* 615 F.3d 847, 851 (2010); *McKinley v. Harrington,* 2014 WL 1292798, 16 (N.D.Ill.2014)(Tharp, J.). Nevertheless, an indigent litigant may request that counsel be recruited for him pursuant to 28 U.S.C. § 1915(e)(1). *Pruitt,* 503 F.3d at 654. Deciding whether to recruit counsel "'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.' Consequently, '[d]istrict courts are ... placed in the unenviable

position of identifying, among the sea of people lacking counsel, those who need counsel the most.'"*Henderson v. Ghosh, _F.3d._,* 2014 WL 2757473, 4 (7th Cir.2014)(citations omitted).

The language of § 1915(e)(1) is "entirely permissive" and does not suggest a "congressional preference for recruitment of counsel in any circumstance or category of case." *Pruitt*, 433 F.3d at 654. Indeed, even in cases reversing a district judges's refusal to enlist counsel, the Seventh Circuit has stressed that the reversal must not be construed as manifesting a judicial preference for counsel. As the Court has forcefully reminded, decisions on the issue of recruitment of counsel are limited by the unique facts and circumstances of each case, and thus any particular "*holding,* like a special railroad fare, is limited to this day and this train only." *Santiago v. Walls*, 599 F.3d 749, 766 (7th Cir. 2010)(emphasis in original). *Accord Bracey v. Grondin*, 712 F.3d 1012, 1018, n.4 (7th Cir. 2013).

Thus, while the majority in *Santiago*, concluded that counsel was necessary under the particular facts of the case,[2] it rejected "the dissent's suggestion that our colleagues in the district court will read this case as placing a 'thumb on the scale' in favor of recruitment" and pointedly said that the dissent's prediction that district judges would henceforth feel obligated to routinely recruit counsel "misapprehends our holding and underestimates our colleagues on the district bench." 599 F.3d at 762, 766 n. 15.

The requirement that counsel be recruited is not determined by the precise classification, category, or nature of the claim being made. *Santiago*, *supra*. Rather, decisions under § 1915(e)(1) involve an exercise of the informed discretion possessed by the district court. *Santiago*; *Johnson v. Doughty,* 433 F.3d 1001, 1006 (7th Cir. 2006).[3] When confronted with a request under § 1915(e)(1)

---

[2] Judge Sykes dissented.

[3] This does not mean that a judge is free to do as he pleases. " In a government of laws, judges are not

(continued...)

for *pro bono* counsel, the threshold inquiry is whether the plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so. There is no bright-line rule as to what constitutes a reasonable attempt. Nor could there be since in all contexts reasonableness is a flexible concept that depends on circumstances. *Cf. American Nat. Bank and Trust Co. v. Hoyne Industries, Inc.*, 966 F.2d 1456, *7 (7th Cir. 1982); *Shields v. Burge*, 874 F.2d 1201, 1204 (7th Cir. 1989). The inherent flexibility of the reasonableness analysis necessitates a case-by-case basis assessment.

Mr. Harper's motions demonstrate that he has made reasonable efforts to obtain private counsel. (Pl.'s Mot., ¶ 2) (Dkt. 11). Four lawyers have declined to take his case without payment.[4] Each of the named attorneys is known to the court to take cases on a contingency fee basis, and it is therefore fair to assume all were unwilling to take the plaintiff's cases on that basis. While the plaintiff's submission could have been more informative on the question of his attempts to recruit private counsel, I think it is sufficient.

---

[3](...continued)

permitted to make unreasonable rulings. '[D]iscretionary choices are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416 (1975).... 'We must not invite the exercise of judicial impressionism. Discretion there may be, but 'methodized by analogy, disciplined by system.' Cardozo, *The Nature of the Judicial Process* 139, 141 (1921). Discretion without a criterion for its exercise is authorization of arbitrariness..'.... In the influential formula of Judge Calvert Magruder, a discretionary ruling by a lower court must be set aside if the reviewing court 'has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Wells Fargo Bank, N.A. v. Younan Properties, Inc.* 737 F.3d 465, 467-468 (7th Cir.2013)(Posner, J.).

[4] The names of the four attorneys, as well as their respective firms, addresses, and phone numbers , are listed. (Pl.'s Mot., ¶ 2) (Dkt. 11).

**2.**

We turn then to the second inquiry under *Pruitt,* which is whether, given the legal and factual complexities of the case, the plaintiff is competent to develop the evidence and coherently present it to a judge or jury. *Pruitt,* 503 F.3d at 655. "We...examine both the difficulties posed by the particular case and the capabilities of the plaintiff to litigate such a case." *Santiago,* 599 F.3d at 761; *Pruitt,* 503 F.3d at 654-55; *Henderson*, 2014 WL 2757473, 4. The cases state pellucidly that the requirement that counsel be recruited is not determined by the precise classification, category, or nature of the claim being made. *Santiago*, *supra*. Thus, although transfer of a plaintiff from one prison to another can require recruitment of counsel, not all cases involving such a transfer require that counsel be recruited. *See, e.g., Olson v. Morgan*, 750 F.3d 708 (7th Cir. 2014); *Millbrook v. United States*, _Fed.Appx._, 2014 WL 1801732, *3 (7th Cir. 2014) (recognizing that while plaintiff's transfer may create burdens, transfer alone does not require automatically that plaintiff is entitled to counsel, especially where plaintiff knew the identities of all employees involved, and participated in relevant discovery).[5]

So, too, with cases involving claims of deliberate indifference to a plaintiff's safety or medical needs. State-of-mind questions are not categorically deemed too difficult for *pro se* plaintiffs. *See, e.g., Olson*, 750 F.3d at 712 (finding that plaintiff was capable of handling claims for deliberate indifference to his medical needs and safety); *Rowe v. Morton*, 525 Fed.Appx 426, 429 (7th Cir. 2013)(finding that plaintiff was not entitled to counsel because his allegation that defendants acted with deliberate indifference to his safety when denying his request for placement

---

[5] While *Collins* and a number of other cases cited in this Opinion are nonprecedential, they nonetheless ought not be overlooked since unpublished decisions can "offer helpful guidance." *United States v. Ramirez,* 675 F.3d 634, 636 (7th Cir.2011).

in protective custody due to potential threats from inmates was not complex and did not require expert testimony); *Romanelli,* 615 F.3d at 852 (finding that proving deliberate indifference was not too complex for a *pro se* litigant).[6] Thus, Mr. Harper's claim that the defendants ignored his repeated warnings that his cellmate posed a risk to his safety, (13 C 8595),[7] does not necessarily mean that he is entitled to have counsel

### 3.

Mr. Harper's five cases do not appear complex – or at least not any more complex than many of the cases in which the district court's refusal to recruit counsel have been sustained on appeal. Neither the legal issues raised in the complaints nor the evidence that might reasonably be necessary to support the claims are so complicated as to exceed a layperson's grasp. So far as thus far can be ascertained, Mr. Harper's Complaints will involve straightforward testimony from the plaintiff, himself, the defendants, and any witnesses who may have overheard the alleged warnings and requests for protection and interactions with medical staff.

The testimony will not be complex or lengthy or present any difficult legal issues. Either he told the guards of the claimed risk from his cellmate or he did not. Either he complained of pain and sought medical attention or he did not.[8] There is nothing difficult in developing this testimony or

---

[6] Numerous other cases have refused to recruit counsel where the Complaints alleged conscious indifference to medical needs. *See e.g., Parker v. Dart,* 2013 WL 4506958, 4 (N.D.Ill.2013); *Gibson v. Dart,* 2013 WL 3490722, 4 (N.D.Ill. 2013); *Dear v. Dart,* 2013 WL 3270680, 4 (N.D.Ill..2013); *Smith v. Dart*, 2012 WL 965115 (N.D.Ill. 2012).

[7] It is alleged that plaintiff repeatedly told Officer Bolton that his cellmate's behavior was erratic and abnormal. (Compl. ¶ 1, Dkt. 6). Thereafter, plaintiff's cellmate allegedly stabbed plaintiff in the left forearm with an ink pen. The plaintiff received medical treatment in the prison's dispensary as well as further treatment at John Stroger, Jr. Hospital. Plaintiff alleges no serious consequences resulting from any sort of delay in treatment or inadequacy of treatment.

[8] Of course, there will be no hearsay problem with this sort of evidence. *See Junior v. Anderson*, 724 F.3d
(continued...)

obtaining relevant documentary or testimonial evidence if it exists. Mr. Harper knows the identities

of all of the employees and witnesses involved and all are amenable to discovery. *Cf. Millbrook,*

*supra.* That there may be conflicting testimony is not, standing alone, a sufficient basis to recruit

counsel. *See e.g. Barrett v. Wallace,* _ Fed.Appx._, 2014 WL 3058289, 3 (7th Cir.2014).

There are, to be sure, cases in which the evidence will be too complex and intricate for an

incarcerated plaintiff to be able to obtain, develop, and present without the aid of counsel. *Junior v.*

*Anderson*, 724 F.3d 812, 813 (7th Cir. 2013) is a conspicuous example of such a case. There, the

plaintiff, a pretrial detainee in a maximum-security tier of the Cook County Jail in Chicago, brought

suit under 42 U.S.C. § 1983 against a prison guard, alleging she had failed to protect him from an

attack by other inmates. Prior to the attack, the plaintiff alleged that he heard other prisoners ask

Anderson to unlock certain cells from another section of the maximum-security tier so more

prisoners could use the dayroom, which is specifically against jail regulations that only allow half

of the maximum-security tier in the dayroom at any one time for security reasons. 724 F.3d at 814.

Shortly thereafter, the plaintiff heard the sound of new cells unlocking, but instead of the

prisoners entering the dayroom, they crowded in a dark corner of the corridor. Upon exiting the

dayroom, a group of prisoners armed with shanks attacked the plaintiff from behind; some attackers

had also been in the dayroom with the plaintiff while two other prisoners were from cells unlocked

against prison regulations. *Id.* One of the two attackers, from the cells not supposed to be released,

occupied a cell that Anderson had noted earlier as being a "security risk" – meaning it was not

locked properly – yet she did nothing more than note the risk, and did not attempt to fix the problem.

*Id.* at 813.

_____

[8](...continued)
812, 814 (7th Cir. 2013).

The plaintiff managed to escape the attackers and fled to Anderson's station for help. However, the defendant was not present. The defendant alleged that she did not leave her station, yet oddly claimed she did not witness the attack despite the fact that her station faced the dayroom. The defendant also alleged that she did not release any cells that were not supposed to be released even though the record indicated that one of the attackers was from a cell that was supposed to remain locked. Following the attack, the plaintiff was transferred to a new prison 300 miles from Chicago. This caused the plaintiff extreme difficulties in preparing his case because there was no way to obtain Cook County Jail records or depose witnesses unless possibly deposing witnesses via video conferencing. *Id.* at 814-815.[9]

The district court denied the plaintiff's motion for counsel, reasoning that his claim was simple, and that the plaintiff was fully capable of litigating his case, despite having little education and being 300 miles away from where the incident occurred. *Id.*[10] On appeal, the Seventh Circuit reversed, concluding that "a plaintiff's inability to investigate crucial facts by virtue of his being a prisoner or the remoteness of the prison from essential evidence is a familiar ground for regarding counsel as indispensable to the effective prosecution of the case." *Id.* Moreover, the Court found that there were large gaps in the evidence that only counsel could have been in a position to investigate. Here is how Judge Posner put it:

---

[9] *See also Navejar v. Iyiola*, 718 F.3d 692, 698 (7th Cir. 2013)(concluding that the plaintiff was prejudiced by proceeding without a lawyer after being transferred to a new prison because he faced "significant problems" in "identifying key witnesses, deposing the defendants, and gathering pertinent evidence."); *Santiago*, 599 F.3d at 760-62 (plaintiff was unable to gather evidence or to take depositions because he was no longer incarcerated at Menard, the prison where he was assaulted by other prisoners, and where all of the defendants, witnesses and evidence were located). No such logistical problems exist here.

[10] The plaintiff explained there was no way he could obtain Cook County jail records, depose witnesses (notably the defendant), or otherwise prepare the case. Judge Posner noted that maybe he could have conducted depositions from afar by video, but no evidence concerning the feasibility of that approach was presented; nor had the defendant argued that it would have been feasible. 724 F.3d at 815.

Unanswered questions abound. Had there been a time when all the prisoners in the tier had been allowed to mingle in the dayroom? If so, had there been violence, which the rule permitting only half the prisoners to be in the dayroom at the same time had been adopted to prevent from recurring? How frequently under the current rule of separation (though flouted when the attack occurred) do prisoners from the two rows mingle in the dayroom, and with what consequences? Did the defendant know that just a few weeks earlier the plaintiff's cellmate had been assaulted and stabbed in the dayroom and that according to him prisoners from the supposedly locked-down side of the tier had been in the dayroom at the time? And how, by the way, are prisoners assigned to one row or the other? Randomly? Or is an attempt made to keep prisoners who are likely to get into fights with each other apart? Also useful would be the criminal records of the prisoners at the time of the attack—just how dangerous were those prisoners? And finally there is the question whether the two Andersons are related—a question the plaintiff can't investigate on his own.

All these gaps cry out for evidence that a lawyer could obtain but the plaintiff could not. The judge should have realized this and tried to get him a lawyer.

724 F.3d at 816.

The facts in this case are not remotely comparable to those in *Junior*. Here, there will be, at least so far as one can tell now, no "gaps [that] cry out for evidence that a lawyer could obtain but the plaintiff could not."

### 4.

Mr. Harper's claim in 13 C 9265 that defendants, Mansour and Patel, provided inadequate treatment for a hernia suffered prior to his incarceration despite his continual assertions that the pain was severe and worsening does not automatically entitle him to counsel. *See supra* at 5. The facts in this claim are not comparable to the complexity to those found in *Jackson v. Hepp*, 558 Fed.Appx 689 (7th Cir. 2014), where the court found that counsel was required .

In *Jackson*, the plaintiff, an inmate at Jackson Correctional Institution ("JCI"), brought suit under 42 U.S.C. § 1983 claiming a JCI doctor, nurses, and other employees violated the Eighth Amendment by inadequately treating his chronic back pain and disregarding an outside podiatrist's instructions for postoperative care following the plaintiff's foot surgery. 558 Fed. Appx. at 690, 692.

In November 2009, plaintiff was transferred to JCI and shortly thereafter began complaining about hip and back pain. *Id*. Hip x-rays later indicated Jackson suffered from degenerative hip disease and prison doctors subsequently prescribed Jackson a pain reliever to help alleviate some of the pain. *Id*. Not long after, Jackson repeatedly complained of worsening back pain, the pain being so severe at night that Jackson could not make it to the toilet in time, could not sleep, and could not sit for long periods. *Id*. Over the course of the year, Jackson continued to complain of severe back pain and saw the prison physician on numerous occasions, but to no avail. *Id*.

Furthermore, Jackson alleged that the prison physician misrepresented his medical records because the doctor indicated that Jackson was not currently taking any pain medications, which Jackson said was untrue; that Jackson was prescribed physical therapy, which Jackson claims did not result in actual therapy, yet the physician indicated that Jackson's condition improved with therapy; and that Jackson lifted weights and played basketball daily, which Jackson asserted was impossible because JCI inmates are not granted daily recreational privileges. *Id*.

In December 2010, although Jackson had an x-ray taken of his back which indicated degenerative changes, the nurse practitioner declared additional treatment was unnecessary, and the physician and nurse practitioner did not investigate any additional treatments. They merely prescribed different pain relievers and a second physical therapy evaluation, which again did not result in actual therapy. *Id*. at *2.

10

In addition to Jackson's back complications, Jackson underwent surgery in April 2011, to remove the nail on both of his big toes to correct a recurring infection. *Id.* Following the surgery, the podiatrist instructed that Jackson's feet be soaked in soapy water daily for four to six weeks in order for the wounds to properly heal; however, after Jackson's second day back at JCI the foot soaks stopped. *Id.* Jackson repeatedly called down to the infirmary and after three days was finally given his own supplies for foot soaks, which were difficult for him to perform on his own due to his back pain and the supplies only lasted thirteen days. *Id.*

On May 6, Jackson reported to the infirmary where the prison physician declared Jackson's wounds to be properly healed, and that foot soaks were no longer required; this being only twenty-two days post-surgery. *Id.* at *3. Two days later, Jackson complained that his big toes were seeping blood and pus, yet, Jackson did not receive medical attention until eight days later. *Id.* By this point, Jackson's toes had once again become infected

During litigation, Jackson filed three separate motions for counsel, which were denied. *Id.* Summary Judgment was ultimately entered in favor of the defendant. The plaintiff was still unrepresented by counsel. The Seventh Circuit reversed, reasoning that given the nature of Jackson's claims, he would most likely need expert witness testimony in order to prove that the treatment he received was inadequate. *Id.* at *4. Furthermore, as in *Junior*, the "district court's observations about the gaps in the evidence, and Jackson's inability to exploit those gaps in fending off the defendants' motion for summary judgment show why help for counsel was essential." *Id.* Additionally, the Court noted that the district court failed to consider Jackson's assertions that his new medication made it difficult for him to focus, and that his placement in segregation hampered

his ability to respond to the defendants' motion for summary judgment as well as hindered his ability to identify and contact witnesses who were not present at JCI. *Id.*

The Court referenced *Santiago*, *Navejar*, *Bracey*, and *Pruitt*. As was the case in *Junior*, Jackson's claims were not too complex for a *pro se* litigant to comprehend; however, the severity of each ailment, the introduction of parties outside of JCI, the costly delay in treating his surgery wounds, and the misrepresentation of his medical records created unique circumstances that necessitated the appointment of counsel in that case. The dramatic differences between that case and this warrant a different outcome.

Plaintiff admits to being examined by both defendants on at least four occasions and after each examination defendants informed him that unless the pain was debilitating there was nothing the medical staff could do to correct the issue. Again, either the facts are as alleged or they are not. But no one is better equipped than Mr. Harper, himself, to explain what happened or to testify about his suffering. While it appears that this particular complaint might involve some medical testimony – and it is not at all certain that is the case - there are no categorical rules establishing a clear line when a case involving medical evidence necessitates appointment of counsel. *Henderson*, 2014 WL 2757473, 6.

Of course, where claims of indifference to medical needs involve complicated testimony requiring expert testimony by doctors, the situation is different. *Compare Henderson*, 2014 WL 2757473 (reversing district court's refusal to recruit counsel where the plaintiff had a documented low IQ, was functionally illiterate, had a poor education, was inexperienced with civil litigation, and

the case involved quite complicated medical evidence requiring medal experts in order for the plaintiff to prevail).[11]

Mr. Harper's case is simply not comparable to *Henderson* or *Jackson* and cases like them. No medical evidence is necessary to prove that Mr. Harper was in pain. No one is a more competent witness than he to testify about the pain he claims to have experienced and the extent of his suffering. Indeed, a plaintiff's testimony cannot be ignored or found not credible even if a doctor cannot find a verifiable cause for the claimed pain. *See Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010); *Metzger v. Astrue,* 263 Fed.Appx. 529, 533 (7th Cir. 2008). *Compare United States v. Vrdolyak,* 593 F.3d 676, 679 (7th Cir. 2010)(a witness can always testify about his own intent).

*Rivera v. Schultz*, 556 Fed.Appx 500, 501 (7th Cir. 2014) held that the plaintiff was not entitled to appointment of counsel despite his alleged mental impairments because he prepared motions and interrogatories, participated in a pre-trail phone conference, and his claim was simple and not beyond his ability to litigate. *Olson,* 750 F.3d 712 held that notwithstanding his "mental health problems," plaintiff was not entitled to counsel because his allegations that defendants acted with deliberate indifference in delaying treatment for his broken tooth did not involve a state-of-mind issue that was too complex for a *pro se* litigant. And *Collins v. Alevizos*, 404 Fed Appx.58, 62 (7th Cir. 2010) concluded that plaintiff was not entitled to counsel where the claim was for deliberate

---

[11] In fact, it was the absence of the requisite medical testimony that paradoxically led to the granting of the defendants' motion for summary judgment in *Jackson*. 2014 WL 2757473, 7. As the Court of Appeals pointed out that had counsel been recruited during the discovery phase, counsel could have served discovery requests; could have deposed the defendants, probing them about their subjective knowledge of Henderson's significant kidney problems – he had end stage renal failure allegedly as a result of the defendants' indifference to his situation – and the accepted standards of care; could have deposed the hospital nephrologist regarding Henderson's medical condition and the proper treatment for kidney disease; and could have produced other evidence on the accepted standard of care –none of which the plaintiff or any other non-expert could do.

indifference in denying medical treatment for glaucoma and other eye injuries since the evidence involved was not "unique and difficult."

**5.**

In plaintiff's third Complaint, he alleges Officer Keating and Dr. Salim Dawaliki acted with deliberate indifference to his serious medical needs when Officer Keating delayed his requests to visit the dispensary because of redness and irritation in his left eye. (14 C 1984) (Compl. ¶ 2-4) (Dkt. 5). Plaintiff admits, however, that he had seen the nurse three days earlier about his left eye, and was informed by a nurse that she could find nothing wrong with his eye. *Id.* After pleading with a different correctional officer, defendant Dawaliki examined the plaintiff's eye and prescribed a topical cream for dry eyes which did not cure the redness, irritation, and swelling, so plaintiff had to see another physician five days later before being prescribed antibiotics. *Id.* at ¶ 5, 6. Plaintiff asserts that defendant Dawaliki's wrong diagnosis caused him "needless suffering" for the five days following his examination. *Id.* Again, these are factual matters uniquely within the plaintiff's own knowledge and memory and about which he is more competent to testify than anyone else and which do not involve "unique or difficult" medical evidence. *Collins*, 404 Fed Appx. at 62.

Plaintiff's fourth Complaint alleges that defendants, Greer, Iracheta, and Dart acted with deliberate indifference to his serious medical needs of weak arches, corns, and calluses on his feet by confiscating his prescribed, orthopedic shoes, which he wore from November 12, 2011, to February 1, 2014, before they were confiscated. (14 C 1986)(Compl. ¶ 2-4). Plaintiff alleges he suffers continual ankle pain and swelling stemming from the improper support provided by his new shoes.[12] Once again, the facts of the Complaint are straightforward: either the shoes were confiscated

---

[12] Plaintiff provides no explanation as to why his shoes were confiscated other than the order came from (continued...)

or they were not, and either the plaintiff's ankles were red and swollen or they were not. And finally, either Mr. Harper was in pain and complained or he did not. Like the evidence involved in Mr. Harper's other Complaints, the various allegations of conscious indifference to his medical needs and safety present straightforward factual questions, not requiring complicated, medical or expert testimony. *Lynch v. Northeast Regional Commuter R.R. Corp.* 700 F.3d 906, 915 (7th Cir. 2012).

The Seventh Circuit has repeatedly held that expert testimony is unnecessary where a layperson can understand an injury or condition. See *Wallace v. McGlothan,* 606 F.3d 410, 420 (7th Cir.2010). For example, when an individual suffers from a basic and obvious injury when hit by a vehicle, he or she need not produce expert testimony to show that the collision was the cause of the injury. *Moody v. Maine Central Railroad Co.,* 823 F.2d 693, 695 (1st Cir.1987). This reasoning extends to the scope of a physical limitation which is obvious to an observer and easily described by the sufferer. *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 644 (7th Cir.2010); *Gil v. Reed,* 381 F.3d 649, 659 (7th Cir. 2004). "Jurors do not leave their knowledge of the world behind when they enter a courtroom and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware,* 503 U.S. 159, 171 (1992). *Cf. Jones v. Hamelman,* 869 F.2d 1023, 1028 (7th Cir. 1989); *Ledford v. Sullivan,* 105 F.3d 354, 360 (7th Cir. 1997) (no expert was needed in a deliberate indifference case where plaintiff experienced nausea);*Tullis v. Townley Engineering & Mfg. Co., Inc.*, 243 F.3d 1058, 1066-1068 (7th Cir.2001)(no physician or other professional necessary to prove plaintiff suffered psychologically from defendant's conduct).

<hr />

[12](...continued)
defendant Greer and was carried out by defendants Iracheta and Dart causing immediate aggravation of his pre-existing condition. (Pl.'s Compl. at ¶ 4-5) (Dkt. 5).

Lastly, the plaintiff alleges that he continually told defendants, Mansour and Patel, that his shoulder pain was unabated and worsening due to a displaced rotator cuff, but that they provided inadequate treatment. ( Pl.'s Comp. ¶ 2-9)(Dkt. 8).  He admits that both defendants examined his left shoulder, and they do not deny that he suffers from a displaced rotator cuff and arthritis. Additionally, he admits that he has received physical therapy to combat the pain, although it has been ineffective, and defendant Patel has informed him that the prison used to have a specialist that could "give a shot in the shoulder," but the specialist was no longer an employee of CCDOC.  *Id*.

The particular claims of indifference to plaintiff's medical needs may well involve conflicting testimony about what happened. But that is a common feature of all cases, and is not, itself, a basis to recruit counsel, unless, of course, as in cases like *Junior* and *Jackson* the evidentiary matrix of the case is sufficiently complicated that only a lawyer can make his way through the labyrinth. As all the cases recognize, if the rule were otherwise, every indigent, incarcerated plaintiff would be entitled to counsel, and we would have an automatic rule of appointment, rather than a discretionary decision for each judge to make under the unique circumstances of the case before him.

Of course, as we discussed earlier, there are cases where the factual disputes and the potential and likely conflicts in testimony may be so significant, so pervasive, and so complicated that the assistance of counsel will be necessary to enable the plaintiff to adequately present his case. *Santiago* was such a case.  So too were *Junior* and *Jackson.*  But a comparison of those cases with the instant case supports the conclusion that an attorney need not be enlisted for Mr. Harper.

**6.**

In the instant case, "the plaintiff's literacy, communication skills, educational level, and litigation experience," *Pruitt,* F.3d at 655, support the conclusion that he is capable of proving the

allegations in his several Complaints. He has not been transferred from the facility where the events at issue occurred and the witnesses and relevant documentary evidence are readily available. Given the nature of the claims and the plaintiff's thus far demonstrated capacities, it can fairly be concluded that the plaintiff is more than capable of procuring witness testimony and documentary evidence in the form of medical records, grievances (if any), reports and other documents which refer, reflect, or relate to the allegations in his various clear and concise Complaints.

The plaintiff has alleged no physical or mental disability that might preclude him from adequately investigating and developing the uncomplicated facts underlying his Complaints. And it may be noted parenthetically that even in cases where a *pro se* plaintiff may have some "mental–health problems," the Seventh Circuit has sustained a district courts refusal to enlist counsel. *See e.g., Olson*, 750 F.3d at 712. The reasons he does list to support his request for counsel are insufficient to warrant the relief he seeks.

First is the claimed limited access to the law library. But that is a circumstance common to every incarcerated person. The inescapable reality is that incarceration imposes constraints on a prisoner's ability to prosecute (or defend) a case that do not exist for plaintiffs who are not in jail. *Cf. Bracey*, 712 F.3d at 1018 & n. 4 (sustaining the district court's denial of plaintiff's request for counsel and noting that all inmates confront discovery restrictions similar to those experienced by the plaintiff).

But, as all the cases have emphasized, incarceration obviously cannot and does not translate into an entitlement to counsel. If it were otherwise, there would be a blanket rule of automatic appointment. The inquiry remains, given the plaintiff's litigation capabilities, which necessarily includes the limitation inherent in being incarcerated, is he competent to litigate his claims. The

record in this case supports the conclusion that Mr. Harper is more than competent to litigate his claims without the assistance of counsel.

The plaintiff has clearly exhibited a reasonable understanding of the basic components of the claims in his Complaints and of the theory and underlying evidence involved in his cases. His five separate, coherent and articulate Complaints spell out succinctly what he says occurred and attach a number of exhibits consisting of prison grievances and other internal jail records. Also, they quote an excerpt from a July 11, 2008, Department of Justice Findings letter regarding conditions at the Cook County Jail. Three of the Complaints include relevant medical orders, and one attaches a signed and notarized witness affidavit corroborating plaintiff's allegation. (14-1984 Dkt. 5, Ex. C). In short, it would appear that the plaintiff has not had and will not have obstacles in obtaining documentary evidence and identifying and deposing witnesses. *See Navejar*, 718 F.3d at 698.

The second reason the plaintiff contends require counsel involves alleged misconduct on the part of the defendants. It is Mr. Harper's contention that defendants denied receiving his status hearing conference call, delayed delivery of a piece of legal mail for approximately one month, and opened clearly marked "legal mail" without him being present. (Pl.'s Mot., ¶ 2-4) (Dkt. 29, 12, 10, 12). These allegations have nothing to do with the plaintiff's competency to represent himself. Moreover, the motions allege only one instance of each infraction, and nothing indicates they are likely to be ongoing issues or that what has occurred has hindered plaintiff's ability to pursue his litigation.

In sum, under the particular facts of this case, I believe the plaintiff is able to competently obtain relevant evidence and effectively develop and present it in support of his claims without counsel. The facts alleged and the claimed omissions are not complicated and will not be difficult

to pursue. There are not "gaps [that] cry out for evidence that a lawyer could obtain but the plaintiff could not." *Junior*, 724 F.3d at 816. Nor does it appear that expert medical testimony will be needed and certainly if it were, it would not play the pivotal role it did in *Jackson v. Hepp, supra*.

Mr. Harper's apparent contention that there has been post-filing misconduct by the defendants does not alter the conclusions reached in this Opinion. Mr. Harper claims that defendants denied receiving his status hearing conference call, delayed delivery of a piece of legal mail for approximately one month, and opened clearly marked "legal mail" without him being present. (Pl.'s Mot., ¶ 2-4) (Dkt. 29, 12, 10, 12). These allegations have nothing to do with the plaintiff's entitlement to counsel. Moreover, the motions allege only one instance of each infraction, and nothing indicates they are likely to be ongoing issues or that what has occurred has hindered plaintiff's ability to pursue his litigation.

**7.**

The Complaints allege on information and belief that "Sheriff Dart has established a custom, policy and practice that fails to adequately and timely provide inmates with serious and potentially serious medical conditions with the appropriate care." This allegation is based in part on the July 11, 2008 Department of Justice findings letter quoted above. *See supra* at 18. Plainly, this kind of generalized allegation, based on a six-year-old findings letter, is not sufficient to automatically require recruitment of counsel. If it were, in every case involving the Cook County Jail and allegations of indifference to serious medical needs, there would have to be counsel appointed. That would violate the prohibition against appointments based on categorical classifications and in any event such appointments have not been automatic in cases involving the Cook County Jail. *See e.g.*,

*Parker v. Dart,* 2013 WL 4506958, 4 (N.D.Ill.2013); *Gibson,* 2013 WL 3490722, 4; *Dear,* 2013 WL 3270680, 4; *Smith*, 2012 WL 965115.

**8.**

There is a final point that requires discussion. Often, requests for counsel are properly denied as "premature," even though changed circumstances may later require that the court enlist counsel. *See Luckett v. Heidorn*, 2014 W L 2766202, 4-5 (7th Cir. 2014)("The earlier requests were appropriately denied because recruiting a lawyer would have been a premature step early in the litigation when it was unknown if Luckett would need complex medical evidence. But that was no longer the case once the litigation was well underway, particularly after the doctor had contended at summary judgment that Luckett's bacterial infection was not a serious medical condition and had been adequately treated.")(citations omitted); *Parker v. Dart,* 2013 WL 4506958, 4 (N.D.Ill.2013)("Therefore, Plaintiff's motion for attorney representation is denied at this time. Should the case proceed to a point that assistance of counsel is appropriate, the Court may revisit this request."); *Gibson v. Dart,* 2013 WL 3490722, 4 (N.D.Ill. 2013).

While Mr. Harper is not now entitled to counsel, circumstances may change. Perhaps it will become apparent that in one or more of his complaints is a good deal more complicated than it currently appears or that complex medical testimony may be needed. Should that occur, Judge Tharp is free to – and of course will – reassess the situation.

**CONCLUSION**

The plaintiff is more than capable of pursuing his cases without the court enlisting counsel. Neither the legal issues raised, nor the evidence needed to prove the plaintiff's allegations is too complex for Mr. Harper to be able to obtain, develop and utilize effectively. His careful and

insightful Complaints and motions are evidence of the requisite degree of skill. He remains incarcerated where the alleged incidents took place, and thus there will be no logistical problems making it difficult to obtain and develop evidence. In short, there is nothing to support a conclusion that without counsel he will not be able effectively to prosecute his claims. Therefore, under the circumstances of this case, the plaintiff's motions for the appointment of counsel are denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 7/21/2014

**Pursuant to Rule 72(a), Federal Rules of Civil Procedure, the plaintiff may "serve and file objections to th[is] order within 14 days after being served with a copy." Under Rule 6, Federal Rules of Civil Procedure, the 14-day period shall include Saturdays, Sundays and legal holidays. Under Rule 72(a), a party may not assign as error a defect in the order not timely objected to. Failure to object to this Opinion will result in a waiver of review by Judge Tharp.**